UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:20-CR-3-D (2)

FILED IN OPEN COURT
ON 1|9|20 8|5
Peter A. Moore, Jr., Clerk
US District Court
Eastern District of NC

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) **INDICTMENT** |
| | ) |
| JACQUES YVES SEBASTIEN DUROSEAU | ) |

The Grand Jury charges that:

### General Allegations

At all times relevant to this Indictment, the following circumstances pertained:

### The Export Control Reform Act of 2018

1. The Export Control Reform Act of 2018 ("ECRA") provides, among its stated policy objectives, that "the national security and foreign policy of the United States require that the export, reexport, and in-country transfer of items, and specific activities of United States persons, wherever located, be controlled...." 50 U.S.C. § 4811. To that end, ECRA grants the President the authority "(1) to control the export, reexport, and in-country transfer of items subject to the jurisdiction of the United States, whether by United States persons or by foreign persons; and (2) the activities of United States persons, wherever located, relating to" specific categories of items and information. 50 U.S.C. § 4812. ECRA further grants the Secretary of Commerce the authority to establish the applicable regulatory framework.

1

2. Pursuant to that authority, the Department of Commerce ("DOC") reviews and controls the export of certain items, including goods, software, and technologies, from the United States to foreign countries through the Export Administration Regulations ("EAR"). 15 C.F.R. §§ 730-774. In particular, the EAR restrict the export of items that could make a significant contribution to the military potential of other nations or that could be detrimental to the foreign policy or national security of the United States. The EAR impose licensing and other requirements for items subject to the EAR to be lawfully exported from the United States or lawfully re-exported from one foreign destination to another.

3. The most sensitive items subject to EAR controls are identified on the Commerce Control List ("CCL"), published at 15 C.F.R. part 774, Supp. No. 1. Items on the CCL are categorized by Export Control Classification Number ("ECCN"), each of which has export controls requirements depending on destination, end use, and end user.

4. Pursuant to ECRA, "[i]t shall be unlawful for a person to violate, attempt to violate, conspire to violate, or cause a violation of this part or of any regulation, order, license, or other authorization issued under this part," and, "[a] person who willfully commits, willfully attempts to commit, or willfully conspires to commit, or aids or abets in the commission of, an unlawful act described in subsection (a) shall" be guilty of a crime. 50 U.S.C. § 4819.

## The Arms Export Control Act of 1976

5. The Arms Export Control Act of 1976 ("AECA"), 22 U.S.C. §§ 2751-2799, granted the President of the United States the authority to control the import and export of defense articles and defense services.

6. Pursuant to Title 22, United States Code, Sections 2778(b)(2) and 2778(c), it was a crime to willfully export and cause to export from the United States to another country a defense article designated as such on the United States Munitions List ("USML"), without having first obtained from the United States Department of State ("Department of State") a license for such export and written authorization for such export.

7. The USML, 22 C.F.R. § 121.1, is a list of articles, services, and related technology designated as defense and space-related by the United States. This designation is pursuant to sections 38 and 47(7) of the AECA, 22 U.S.C. §§ 2778 and 2794(7). These articles fall under the export or temporary import jurisdiction of the Department of State.

8. Through the International Traffic in Arms Regulations, the Department of State, Bureau of Political Military Affairs, Directorate of Defense Trade Controls ("DDTC"), reviewed and controlled the export from the United States to foreign countries of defense articles. 22 C.F.R. § 123.1.

3

Case 4:20-cr-00003-D   Document 13   Filed 01/09/20   Page 3 of 13

### The Commodities

9.  The commodities at issue ("the Commodities") were a Leupold & Stevens Mark AR MOD 1, 1.5-4x20 Riflescope, and a Sig Sauer Sierra 3BDX Riflescope, Model # 99B0003432EFF. The Commodities were classified under ECCN 0A987, and at all times a license was required to export them to Haiti.

### The Defense Articles

10. The defense articles at issue ("the Defense Articles") were a Beretta model M9 65490, a Sig Sauer model SP2022, a Sig Sauer model P229, a Sig Sauer model P320, a Spikes Tactical model ST15, a Spring Field Armory model Saint, a Precision Ruger model Precision Rifle 300WIN MAG, an Armscor Model Rock Island M1911-A1 CS caliber 45, ammunition, and Small Arms Protective Insert plates. The Defense Articles were classified under USML Categories I, III and X, and at all times a license was required to export them to Haiti.

### Relevant Individuals

11. JACQUES YVES SEBASTIEN DUROSEAU ("DUROSEAU"), defendant herein, was an active duty Marine with the United States Marine Corps ("USMC"), and a naturalized United States citizen from Haiti.

12. Individual T.H. was an enlisted Marine in the Inactive Ready Reserve with the rank of Sergeant with the USMC.

## Licensing Requirements and Status

13. At no time did the defendant, DUROSEAU, apply for, receive or possess a license or authorization from the Department of Commerce – BIS, to export the Commodities to Haiti.

14. At no time did the defendant, DUROSEAU, apply for, receive or possess a license or written authorization from the Department of State – DDTC, to export the Defense Articles to Haiti.

## COUNT ONE

Paragraphs 1 - 14 of the General Allegations section above are incorporated herein by reference.

From at least sometime in April 2019, the exact date being unknown to the Grand Jury, and continuing thereafter until on or about November 12, 2019, in the Eastern District of North Carolina, and elsewhere, JACQUES YVES SEBASTIEN DUROSEAU, defendant herein, and others both known and unknown to the Grand Jury, did knowingly combine, conspire, confederate and agree to commit offenses against the United States, that is:

a. To willfully attempt to export and attempt to cause the export of the Commodities from the United States to Haiti without first having obtained the required licenses and authorizations from BIS, in violation of Title 50, United States Code, Section 4819, and Title 15, Code of Federal Regulations, Part 744 Supp. No. 1, and Sections 742.7 and 742.17;

5

b. To knowingly and willfully export and cause to exported from the United States to Haiti the Defense Articles which were designated as defense articles on the USML, without having first obtained from DDTC a license for such export and written authorization for such export, in violation of Title 22, United States Code, Sections 2778 (b)(2) and 2778(c), and Title 22, Code of Federal Regulations, Sections 121.1, 123.1, and 127.1; and

c. To knowingly export from the United States, and attempt to export and send from the United States, the Commodities and Defense Articles contrary to law and regulation of the United States, and to facilitate the transportation of the Commodities and Defense Articles, prior to exportation, knowing the same to be intended for exportation contrary to law and regulation, specifically, Title 22, United States Code, Sections 2778 (b)(2) and 2778(c), and Title 22, Code of Federal Regulations, Sections 121.1, 123.1, and 127.1, in violation of Title 18, United States Code, Section 554.

## Object of the Conspiracy

It was the object of the conspiracy to illegally export the Commodities and Defense Articles to Haiti in support of an effort to train individuals for the purpose of engaging in armed conflict.

## Manner and Means of the Conspiracy

The conspiracy was carried out by DUROSEAU, defendant herein, and others both known and unknown to the Grand Jury, by impersonating higher rank military members and pretending to be on military business in order to facilitate the transportation of the Commodities and Defense Articles via aircraft to Haiti.

## Overt Acts

In furtherance of the conspiracy and in order to effect the object thereof, the defendant, DUROSEAU, and his co-conspirators, did commit, among others, the following overt acts:

1. In April 2019, DUROSEAU contacted an individual known to the Grand Jury in Haiti to discuss DUROSEAU's plans to move back to Haiti, train the Haitian police, and run for president of Haiti.

2. Sometime in early November 2019, DUROSEAU advised the individual known to the Grand Jury in Haiti he was bringing firearms to Haiti.

3. On November 2, 2019, Individual T.H. purchased an American Airlines ticket for DUROSEAU. The ticket scheduled DUROSEAU to depart on November 11, 2019, from the Eastern District of North Carolina, to Port-au-Prince, Haiti.

4. Sometime prior to November 11, 2019, Individual T.H. drafted fraudulent military orders at the direction of DUROSEAU. The orders stated falsely that DUROSEAU was a colonel with the USMC. Additionally, the orders stated that

DUROSEAU was to travel via commercial air and report to his new USMC commanding officer in Port-au-Prince, Haiti.

5. On November 11, 2019, DUROSEAU and Individual T.H. traveled to the Coastal Carolina Regional Airport in New Bern, North Carolina. DUROSEAU was wearing plain clothes. However, Individual T.H. was wearing a USMC battle dress uniform with the rank of captain.

6. On November 11, 2019, at the airport, both DUROSEAU and Individual T.H. checked three suitcases and three plastic boxes containing the Commodities and Defense Articles with American Airlines. While DUROSEAU was checking in the firearm containers, Individual T.H. pretended to be DUROSEAU's subordinate taking notes in a notebook off to the side.

7. On November 12, 2019, DUROSEAU landed at the Toussaint Louverture International Airport, Haiti. DUROSEAU was in possession of the Commodities, the Defense Articles, and a USMC colonel uniform bearing DUROSEAU's name.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO

Paragraphs 1 - 14 of the General Allegations section above are incorporated herein by reference.

On or about November 11, 2019, in the Eastern District of North Carolina, and elsewhere, the defendant, JACQUES YVES SEBASTIEN DUROSEAU, did willfully

8

export, attempt to export, and cause the export of the Commodities from the United States to Haiti, without first having obtained the required licenses and authorizations from BIS.

All in violation of Title 50, United States Code, Section 4819 and Title 15, Code of Federal Regulations, Part 744 Supp. No. 1, and Sections 742.7 and 742.17.

## COUNT THREE

Paragraphs 1 - 14 of the General Allegations section above are incorporated herein by reference.

On or about November 11, 2019, in the Eastern District of North Carolina, and elsewhere, the defendant, JACQUES YVES SEBASTIEN DUROSEAU, did knowingly and willfully export, and attempt to export, from the United States to Haiti, the Defense Articles which were designated as defense articles on the USML, without having first obtained from DDTC a license for such export and written authorization for such export.

All in violation of Title 22, United States Code, Sections 2778(b)(2) and 2778(c), and Title 22, Code of Federal Regulations, Sections 121.1, 123.1, and 127.1.

## COUNT FOUR

On or about November 11, 2019, in the Eastern District of North Carolina, and elsewhere, the defendant, JACQUES YVES SEBASTIEN DUROSEAU, did knowingly export from the United States, and attempt to export and send from the United States, firearms and ammunition, that is, a Beretta model M9 65490, a Sig

Sauer model SP2022, a Sig Sauer model P229, a Sig Sauer model P320, a Spikes Tactical model ST15, a Spring Field Armory model Saint, a Precision Ruger model Precision Rifle 300WIN MAG, an Armscor Model Rock Island M1911-A1 CS caliber 45, ammunition, and Small Arms Protective Insert plates, contrary to law and regulation of the United States, and did facilitate the transportation of said firearms and ammunition, prior to exportation, knowing the same to be intended for exportation contrary to law and regulation of the United States, specifically, Title 22, United States Code, Sections 2778(b)(2) and 2778(c), and Title 22, Code of Federal Regulations, Sections 121.1, 123.1, and 127.1.

All in violation of Title 18, United States Code, Section 554.

## COUNT FIVE

Paragraphs 9 - 10 of the General Allegations section above are incorporated herein by reference.

On or about November 11, 2019, in the Eastern District of North Carolina, and elsewhere, the defendant, JACQUES YVES SEBASTIEN DUROSEAU, did falsely assume and pretend to be an officer and employee of the United States acting under the authority thereof, that is as a Colonel of the United States Marine Corps, and in such assumed and pretended character did act as such, in that he falsely represented himself to be a Colonel of the United States Marine Corps engaged in official travel and thus asserted authority to transport the Commodities and Defense Articles to Haiti, in violation of Title 18, United States Code, Section 912.

## FORFEITURE NOTICE

The defendant, JACQUES YVES SEBASTIEN DUROSEAU, is hereby given notice that all of the defendant's interest in all property specified herein is subject to forfeiture.

Upon conviction of any of the offense(s) set forth in Counts One, Three, Four and Five of the Indictment, the defendant shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), as made applicable by Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the said offense.

Upon conviction of any of the offense(s) set forth in Counts One, Three and Four of the Indictment, the defendant shall also forfeit to the United States, pursuant to Title 22, United States Code, Section 401, as made applicable by Title 28, United States Code, Section 2461(c), any arms or munitions of war or other articles, commodity, or technology which is intended to be or is being exported in violation of the laws governing such exports and any vessel, vehicle, or aircraft containing the same or which has been used or is being used to export or attempt to export such arms, munitions of war, other articles, commodities, or technology.

Upon conviction of any of the offense(s) set forth in Counts One and Two of the Indictment, the defendant shall forfeit to the United States, pursuant to Title 50, United States Code, Section 4819(d), any of the defendant's property that was used or intended to be used, in any manner, to commit or facilitate the said violation(s);

11

constituting or traceable to the gross proceeds taken, obtained, or retained, in connection with or as a result of the said violation(s); or constituting an item or technology that was exported or intended to be exported in violation of law.

The forfeitable property includes, but is not limited to, the following:

a) Beretta model M9 65490, serial number M9-3724;

b) Sig Sauer model SP2022, serial number 24B203450;

c) Sig Sauer model P229, serial number 55B006006;

d) Sig Sauer model P320, serial number 58A015844;

e) Spikes Tactical model ST15, serial number SBR-43561;

f) Spring Field Armory model Saint, serial number ST143091;

g) Precision Ruger model Precision Rifle 300WIN MAG, serial number 1804-07332;

h) Armscor Model Rock Island M1911-A1 CS caliber 45, serial number RIA2051373;

i) Any and all related ammunition and/or other defense articles, in the United States Munition List;

j) Leupold & Stevens Mark AR MOD 1, 1.5-4x20 Riflescope; and

k) Sig Sauer Sierra 3BDX Riflescope, Model # 99B0003432EFF

If any of the forfeitable property, as a result of any act or omission of the defendant,

(1) cannot be located upon the exercise of due diligence;

12

(2) has been transferred or sold to, or deposited with, a third person;

(3) has been placed beyond the jurisdiction of the court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

A TRUE BILL

**REDACTED VERSION**
Pursuant to the E-Government Act and the federal rules, the unredacted version of this document has been filed under seal.

1-9-20
DATE

ROBERT J. HIGDON, JR.
United States Attorney

BY: SEBASTIAN KIELMANOVICH
Assistant United States Attorney

13