UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:20-CR-00003-D

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JACQUES YVES SEBASTIEN DUROSEAU | DEFENDANT'S SENTENCING MEMORANDUM AND REQUEST FOR DOWNWARD DEPARTURE OR VARIANCE |

The Defendant, Jacques Yves Sebastien Duroseau, by and through counsel, respectfully submits this sentencing memorandum in support of his request for a reasonable sentence. In consideration of his military service, the trauma that Mr. Duroseau suffered as a child (USSG § 5H1.3), lack of criminal history, and his untreated mental illness, the defense argues that a sentence below the advisory Guideline range is sufficient but not greater than necessary to accomplish the sentencing goals of 18 U.S.C. § 3553(a).

**FACTS RELEVANT TO SENTENCING**

Mr. Duroseau was born in Port-au-Prince, Haiti, in 1986. Haiti is a poor country that has been the victim of several natural disasters and sustained political unrest. Due to these factors, the people of Haiti are living through a true humanitarian crisis. Haiti

1

has been facing a cholera outbreak since 2010.[1] The maternal mortality rate in 2003 was 523 deaths per 100,000 live births, these rates were the worst in the hemisphere.[2] Additionally, a Haitian Health Ministry survey conducted in the 1980s identified the mortality rate at 1,400 per 100,000 live births.[3] This is the condition of Haiti when Mr. Duroseau was born. In addition to health conditions, Mr. Duroseau had to survive natural disasters in the form of earthquakes and hurricanes. Unfortunately, as Mr. Duroseau knows, these conditions have not gotten better, they have deteriorated with the increase of crime and drug cartel operations.[4]

At the young age of five years old, in 1991, Mr. Duroseau saw the first of several coup d'état in his country. This governmental unrest caused suffering for the people of Haiti, and Mr. Duroseau's childhood was impacted severely by this unrest. He suffered from watching violence and the conditions' lawlessness created in his hometown. Unfortunately, the 1991 coup was not the only coup he lived through. Mr. Duroseau had to endure another, more violent, uprising in 1994. At the young age of approximately 9 years old, Mr. Duroseau remembers watching shootouts and armed tanks roll through his neighborhood. Mr. Duroseau also saw criminal elements, such as gangs and drug

---

[1] *See* https://www.npr.org/sections/goatsandsoda/2016/10/21/498704601/paul-farmer-is-surprised-and-upset-and-humbled-after-visit-to-haiti
[2] Testimony of Paul Farmer before the Committee on Foreign Relations, United States Senate. https://www.foreign.senate.gov/imo/media/doc/FarmerTestimony030715.pdf
[3] . See Jean-Louis R. *Diagnostic de l'état de santé en Haïti. Forum Libre I (Médecine, Santé et Démocratie en Haïti)* 1989: 11-20
[4] See *2019 Drug Enforcement Administration National Drug Threat Assessment*, pages 106-07, December 2019, https://www.dea.gov/sites/default/files/2020-01/2019-NDTA-final-01-14-2020_Low_Web-DIR-007-20_2019_1.pdf

cartels, take advantage of the situation and cause further destruction of property and human lives. It was during this coup, Mr. Duroseau saw his future; Mr. Duroseau also saw members of the United States Marine Corps, as part of Operation Uphold Democracy, come into his neighborhood and take on the criminals, thugs and cartels. In his exit interview, Mr. Duroseau recounts how he still sees movement of Marines into a tactical position – weapons at the ready- when he goes to sleep. When Mr. Duroseau saw these men wearing green uniforms, fighting for his freedom, he decided at that point that he wanted to be a United States Marine.

In June of 2011, while not yet an American citizen, Jacques Duroseau achieved his dream and joined the United States Marine Corps. When he joined, he did a survey to answer the question "why he joined the Marine Corps." See Exhibit A "Why I joined the Marine Corps" Statement attached. He stated because the challenge was a worthy one, he saw the courage the men showed when they came into Haiti in 1994, and he wanted to attain physical fitness. Finally, Mr. Duroseau stated that physical fitness was important because, as a child growing up in Haiti, nutrition, safe sources of food and good health were not normal luxuries. On July 21, 2011, Mr. Duroseau became a United States Marine. As a Marine he served in war zones, aboard ships, as a trainer at the USMC Officer Candidate School at Quantico, and taught Marines who needed additional training so they could defend American Embassies abroad. At all of his postings, Mr. Duroseau served as an exemplary Marine scoring above his peers in fitness reports and

progressing in rank. See Exhibit B, USMC Certificates of Achievement and Fitness Reports.

In 2013, Mr. Duroseau was deployed to Afghanistan in support of Operation Enduring Freedom. When he deployed, he was not yet an American citizen; because of this fact his application for citizenship was in jeopardy because he was overseas during his application period. He risked a lapse in his residency, which would, in turn, jeopardize his ability to gain citizenship. Instead of requesting to stay stateside, Mr. Duroseau understood that he risked his citizenship by deploying to serve his adopted country. Due to the valor and determination showed by Mr. Duroseau, his command took all actions possible to ensure that he could still become a citizen. On March 1, 2013, while on a battlefield in Afghanistan, Mr. Duroseau became a citizen of the country he fought for. Soon after his citizenship ceremony, Mr. Duroseau was back in the fight against the Taliban. Unfortunately, during combat actions, Mr. Duroseu was injured and suffered traumatic brain injury, concussion, and lacerations to his torso.[5]

After his last tour, USMC records indicate that he was diagnosed with PTSD, traumatic brain injury, and other post combat ailments. PSR ¶ 44. Also noted within USMC records was a change in mood and demeanor. This, alone is not unusual, but when it is combined with receiving news about his family and friends in Haiti, it placed

---

[5] It appears that the processing for awards associated with combats wounds was initiated, but not completed prior to the discharge of Mr. Duroseau.

great strain on Mr. Duroseau. Being a person who trained to act decisively and address injustice, Mr. Duroseau lawfully purchased firearms and transported the firearms and affiliated equipment on a plane to Haiti, after checking them as luggage. His actions of transporting firearms to Haiti without permission of the Department of Commerce brings before this Court today.

## ARGUMENT

After considering the § 3553(a) factors, the court must make an "individualized assessment" to craft a sentence that is "sufficient, but not greater than necessary." *Gall v. United States*, 552 U.S. 38, 50 (2007); 18 U.S.C. § 3553(a). Applying the § 3553(a) factors to this case reveals that a sentence below the Guideline range is sufficient but not greater than necessary to accomplish the goals of sentencing. Accordingly, we respectfully request that this Court impose a sentence below the recommended Guideline range.

> *A. Mr. Duroseau's military service, good works and minimal criminal history support a downward departure or variance.*

Section 5H1.11 of the Guidelines provides that "[m]ilitary service may be relevant in determining whether a departure is warranted, if the military service, individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines." U.S.S.G. § 5H1.11. Mr. Duroseau's military service distinguishes his case from typical cases and warrant a downward departure or variance.

Mr. Duroseau served in the USMC with distinction. In addition to stateside duties and duties afloat, he served in the United States Central Command Area of Operations in support of Operation Enduring Freedom. His creditable service earned him numerous awards and decorations. While an active duty Marine he earned the Navy Marine Corps Achievement Medal (with 2 Oak Leaves), the National Defense Medal, the Global War on Terrorism Service Medal, the Navy Marine Corps Overseas Service Ribbon (with 2 Oak Leaves), and the Afghanistan Campaign Medal. Unfortunately, after Mr. Duroseau's service in Afghanistan, he lost faith in his command after he requested an opportunity to speak to the Ambassador in Haiti. As Mr. Duroseau was separating from the Marine Corps, he was medically evaluated. PSR ¶ 43. As a result of this evaluation, Mr. Duroseau was diagnosed as suffering from traumatic brain injury, PTSD and other service related injuries.

As the court is aware, the presentence report identifies that Mr. Duroseau has a minimal criminal history. PSR ¶ 32. As a person with a Criminal History Score of 1, he is not representative of the typical defendant before the court. *Id.* The lack of a criminal history is evidence of how aberrant this behavior is. Further, it reinforces the need for treatment to assist him in his post-conviction life.

Mr. Duroseau has a need for medical and mental health treatment as a direct result of his military service, accordingly, this supports a downward variance. *See* 18 U.S.C. § 3553(a)(2)(D) (court must consider the need for the sentence imposed to provide the

defendant with needed treatment). As the presence report identifies, although Mr. Duroseau feels that he is a physically healthy individual, the USMC did determine that he did have a traumatic brain injury and PTSD as a result of his military service. PSR ¶ 45. This was a service-connected injury and is not connected to the allegations that are the subject of his sentencing. *Id*. As such, there is no dispute that Mr. Duroseau's service resulted in long standing injuries for which he is in need of receiving treatment. Accordingly, he is in need of continuing medical support to address his traumatic brain injury and the related issues associated with the injury. Without such therapy, Mr. Duroseau's medical conditions will unfortunately likely to affect him for years to come. These factors distinguish his case from typical cases and warrant a downward departure or variance.

> B. *Mr. Duroseau's untreated mental and emotional conditions support a downward departure or variance.*

As the presence report confirms, Mr. Duroseau suffers from multiple mental and emotional conditions caused by the extreme deprivation and mental health neglect he suffered throughout his childhood. Mr. Duroseau's mental and emotional conditions include depression, post-traumatic stress disorder, traumatic brain injury, anxiety, with a possibility of bi-polar disorder. PSR ¶¶ 44 and 45. Mr. Duroseau requests a mental health evaluation and treatment while in the BOP.

Section 5H1.3 of the Guidelines provides that "[m]ental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions,

individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the Guidelines." U.S.S.G. § 5H1.3. Mr. Duroseau's serious mental health conditions, combined with the trauma he experienced as a child and the trauma experienced while on active duty, distinguish his case from typical cases and warrant a downward departure or variance.

As noted above, Mr. Duroseau had a highly traumatic childhood. It included a coup d'état, an earthquake requiring United Nations assistance, armed conflict on his street at the age of 9, and crippling poverty that created a humanitarian and medical disaster. These are the very traumatic events that motivated Mr. Duroseau to return to Haiti, and these are the very conditions that are present to an unusual degree and highly distinguishable from other basis within the guidelines. His childhood clearly distinguishes him from the typical defendant and warrants a downward departure or variance.

Mr. Duroseau's need for mental health treatment also supports a downward variance. *See* 18 U.S.C. § 3553(a)(2)(D) (court must consider the need for the sentence imposed to provide the defendant with needed treatment). Despite Mr. Duroseau's history of mental health problems and need for treatment, he has never received sustained therapy or counseling to address his disorders. PSR ¶ 45. As a result, Mr.

Duroseau is still in need of the tools to assist him in managing his behavior. Therapy, is what is needed in this case.

Unfortunately, Mr. Duroseau is unlikely to receive any mental health treatment in the Bureau of Prisons. *See, e.g.*, Christine Thompson & Taylor Elizabeth Eldridge, *Treatment Denied: The Mental Health Crisis in Federal Prisons*, WASH. POST/THE MARSHALL PROJECT (Nov. 21, 2018) (discussing the low treatment rate for federal prisoners).[6] Indeed, a 2017 report issued by the Office of the Inspector General found that "only 3 percent of the BOP's sentenced inmate population was being treated regularly for mental illness," despite an internal BOP study suggesting that approximately 19 percent of federal inmates had a history of mental illness and a Bureau of Justice Statistics report concluding that "45 percent of federal inmates had symptoms or a recent history of mental illness." OFFICE OF INSPECTOR GEN., U.S. DEP'T JUSTICE, REVIEW OF THE FEDERAL BUREAU OF PRISONS' USE OF RESTRICTIVE HOUSING FOR INMATES WITH MENTAL ILLNESS (2017).[7] For this reason, Mr. Duroseau's best hope for sustained mental health counseling (in conjunction with intensive substance abuse treatment) lies in the community-based treatment that this Court can impose during Mr. Duroseau's term of supervised release. A sentence below the Guidelines will ensure that Mr. Duroseau receives the treatment he needs sooner

---

[6] Available at https://www.washingtonpost.com/news/national/wp/2018/11/21/feature/federal-prisons-were-told-to-improve-inmates-access-to-mental-health-care-theyve-failed-miserably/?utm_term=.0742d9dc0a94 and
https://www.themarshallproject.org/2018/11/21/treatment-denied-the-mental-health-crisis-in-federal-prisons.
[7] Available at https://oig.justice.gov/reports/2017/e1705.pdf.

rather than later. Accordingly, Mr. Duroseau's need for treatment warrants a downward departure or variance.

## **CONCLUSION**

The Defendant, Jacques Yves Sebastien Duroseau, is asking this Court for a below-Guidelines sentence to allow him the opportunity to receive treatment and continuing care. Given the individualized circumstances of this case, a downward departure or variance is necessary to achieve a sentence that is "sufficient but not greater than necessary." Accordingly, Mr. Duroseau asks this Honorable Court to impose a sentence below the recommended Guideline range.

Respectfully requested this 23d day of February, 2021.

        G. ALAN DUBOIS
        Federal Public Defender

        /s/ Edward D. Gray
        EDWARD D. GRAY
        Assistant Federal Public Defender
        Attorney for Defendant
        Office of the Federal Public Defender
        150 Fayetteville Street, Suite 450
        Raleigh, North Carolina 27601
        Telephone: 919-856-4236
        E-mail: Edward_Gray@fd.org
        N.C. State Bar No. 37539
        LR 57.1 Counsel Appointed

*CERTIFICATE OF SERVICE*

I HEREBY CERTIFY that a copy of the foregoing was served upon:

Sebastian Kielmanovich
Lori B. Warlick
Assistant United States Attorney
United States Attorney's Office
Eastern District of North Carolina
Fayetteville St., Suite 2100
Raleigh, NC 27601

by electronically filing the foregoing with the Clerk of Court on February 23, 2021, using the CM/ECF system which will send notification of such filing to the above.

This the 23d day of February, 2021.

> /s/ Edward D. Gray
> EDWARD D. GRAY
> Assistant Federal Public Defender
> Attorney for Defendant
> Office of the Federal Public Defender
> 150 Fayetteville Street, Suite 450
> Raleigh, North Carolina 27601
> Telephone: 919-856-4236
> E-mail: Edward_Gray@fd.org
> N.C. State Bar No. 37539
> LR 57.1 Counsel Appointed